IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CUSTOM DESIGNS OF NASHVILLE, INC. and MAHAN MARK JANBAKHSH, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No.: 3:08-0665 Judge Trauger |
| ALSA CORPORATION, | ) ) | Magistrate Judge Bryant |
| Defendant. | ) | |

To:    The Honorable Aleta Trauger, District Judge

REPORT AND RECOMMENDATION

I. Introduction

By order entered February 22, 2010, the pending motion for summary judgment filed by plaintiffs in this matter was referred to the undersigned. (Docket Entry No. 53). Plaintiffs have moved for summary judgment seeking damages, injunctive relief, and attorney's fees and costs, for false marking of goods and activities infringing on plaintiffs' patent. (Docket Entry No. 49 at 1). Plaintiffs base their motion on "Plaintiffs' First Set of Requests for Admissions," all of which were deemed admitted by the District Court due to defendant's failure to respond. (Docket Entry No. 37-1 at 2-12; Docket Entry No. 38).

II. Factual Background

Plaintiff Janbakhsh owns U.S. Pat. No. 7,045,168 ("the '168 patent") entitled "Unique Paint Effects and Methods Therefor," which addresses methods for creating a unique pattern on the surface of the underlying base. (Docket Entry No. 1-1 at 1). Alsa is a corporation based in California that produces and sells paint products. (Docket Entry No. 50 at 2). In particular, Alsa

1

produces Crystal FX, a paint product that plaintiffs allege is produced using the same methods that are protected by the '168 patent. (Docket Entry No. 50 at 6.) Alsa initially responded to plaintiffs' complaint and allegations, indicating that it intended to contest plaintiffs' charges. (Docket Entry No. 9.) However, at some point Alsa became unable to pay its attorney, who asked to be removed from the case, and Alsa informed the court that it could not respond to the motion presently under consideration due to the lack of an attorney. (Docket Entry No. 28 at 1-2; Docket Entry No. 54)

### III. Conclusions of Law

#### A. Standard of Review

In patent cases, as in other cases, summary judgment is proper "when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Nike Inc. v. Wolverine World Wide, 43 F.3d 644, 646 (Fed. Cir. 1994); FED. R. CIV. P. 56(c)(2). There must be sufficient evidence supporting the claimed factual dispute in order to defeat summary judgment and send the dispute to trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986) (citing First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)). Courts have given considerable weight in the summary judgment analysis to admissions made by an adverse party under Rule 36. H. B. Zachry Co. v. O'Brien, 378 F.2d 423, 425 (10th Cir. 1967). For the nonmoving party to defeat summary judgment, there must be "more than a scintilla" of evidence showing a dispute of facts. McLean v. 988011 Ontario, Ltd., 224 F.3d 797 (6th. Cir. 2000).

All corporations appearing in this District Court must be represented by an attorney duly admitted or authorized to practice before the court. M.D. Tenn. R. 83.01(d)(3). Alsa has failed to secure new counsel, as instructed by the court, due to financial constraints, and consequently it

has indicated that it is unable to respond to plaintiffs' motion for summary judgment. (Docket Entry No. 34; Docket Entry No. 54). Nonetheless, when an opposing party fails to respond to a motion for summary judgment, a district court must still examine the moving party's motion to ensure he has met his burden of proof. Carver v. Bunch, 946 F.2d 451, 455 (6th Cir. 1991).

B. Alsa's Liability

1. False Marking

Plaintiffs' first claim is that Alsa's manufacture and sale of certain paint products violates the federal false marking statute, codified at 35 U.S.C. § 292.[1] A plaintiff must show two elements by a preponderance of the evidence to prove false marking: (1) that defendant marked an unpatented article and (2) that defendant intended to deceive the public. Forest Group, Inc. v. Bon Tool Co., 590 F.3d 1295, 1300 (Fed. Cir. 2009). Regarding the intent element, "intent to deceive is a state of mind arising when a party acts with sufficient knowledge that what it is saying is not so and consequently that the recipient of its saying will be misled into thinking that the statement is true." Forest Group, 590 F.3d 1295, 1300 (Fed. Cir. 2009) (citing, e.g., Seven Cases of Eckman's Alterative v. United States, 239 U.S. 510, 517-18 (1916)).

In this case, in Alsa's admissions that were deemed admitted by the District Court, Alsa admits to advertising Crystal FX products as "patent pending," despite Alsa's admission that

---

[1] False marking: (a) Whoever, without the consent of the patentee, marks upon, or affixes to, or uses in advertising in connection with anything made, used, offered for sale, or sold by such person within the United States, or imported by the person into the United States, the name or any imitation of the name of the patentee, the patent number, or the words "patent," "patentee," or the like, with the intent of counterfeiting or imitating the mark of the patentee, or of deceiving the public and inducing them to believe that the thing was made, offered for sale, sold, or imported into the United States by or with the consent of the patentee; or whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the same is patented, for the purpose of deceiving the public; or whoever marks upon, or affixes to, or uses in advertising in connection with any article, the words "patent applied for," "patent pending," or any word importing that an application for patent has been made, when no application for patent has been made, or if made, is not pending, for the purpose of deceiving the public -- Shall be fined not more than $500 for every such offense. (b) Any person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States. 35 U.S.C. § 292 (2006).

3

such products are not patent pending and that Alsa knows they are not. (Docket Entry No. 37-1 at 9, Request No. 94). In Request No. 118, Alsa admits that it used the phrase "patent pending" to deceive consumers that the product was in fact legitimate when it was not. (Docket Entry No. 37-1 at 11). These admissions cover all elements of the false marking claim because Crystal FX is a product marked as patent pending when it is not, and because Alsa admits it intended to deceive the public. Further, Alsa had sufficient knowledge that what it was saying was not true, and it did not inform the recipients of its claim (purchasers of paint products) that the claim was not true. Moreover, Alsa admitted in its initial answer that it had used the term "pat. pending" on its Crystal FX products, but that it had stopped doing so at some indeterminate time. (Docket Entry No. 9 at 4). Therefore, the undersigned recommends that the District Court grant plaintiffs' motion for summary judgment on the false marking claim.

## 2. Direct Infringement of the '168 Patent

Plaintiffs also move for summary judgment on their direct infringement claims. They assert that claims 1, 11, and 17 are independent claims necessitating separate analysis. (Docket Entry No. 50 at 5.) Independent claims are claims that stand on their own and contain all of the elements of infringement. An infringement analysis requires, first, that the court determine "the scope and meaning of the patent claims asserted," and second, that the court compare the properly construed claims to the allegedly infringing device. Cybor Corp. v. Fas Techs., 138 F.3d 1448, 1454 (Fed. Cir. 1998). Furthermore, plaintiffs allege that Alsa has infringed its method of production, so the infringement is a method claim. To be held liable, a defendant must have performed all steps of the claimed method. Lucent Techs. v. Gateway, Inc., 580 F.3d 1301, 1317 (Fed. Cir. 2009). In the instant case, the claims do not need to be construed because neither party has raised questions on the meaning of the patent claims. Thus, all that remains is

4

to compare the claim terms to the alleged infringement process used by Alsa.

### a. Claim 1

Claim 1 sets forth a method for producing a pattern on a hard surface using complex layers of paint and removing certain layers.[2] By its admissions, Alsa concedes that it performed all of the steps of the patented claim in the process of producing and using its Crystal FX product, and that it did so on the same type of surface as intended by the patented claim. (Docket Entry No. 37-1 at 2, Request Nos. 3-8). Since Alsa admits to performing all of the steps of the claimed method, the undersigned concludes Alsa should be held liable for direct infringement of the '168 patent claim 1.

### b. Claim 11

Claim 11 sets forth a method for producing a decorative appearance on a surface using methods similar to claim 1.[3] By its admissions, Alsa again concedes that it performed all of the steps of the patented claim 11 in producing and using Crystal FX. (Docket Entry No. 37-1 at 4, Request Nos. 27-32). Since Alsa admits to performing all of the steps of the claimed method, the undersigned concludes that Alsa should be held liable for direct infringement of the '168 patent claim 11.

---

[2] Claim 1. A method for producing a pattern on an original surface of a substrate, comprising: applying to the original surface a coating of a patterning composition which forms a crystalline pattern on the original surface; applying a coat of paint to the original surface of the substrate and over the coating of the patterning composition; and removing the coating of the patterning composition and the coat of paint applied thereover to reveal a decorative crystalline pattern reflected in the paint remaining on the surface to which the coating of the patterning composition had been applied. (Docket Entry No. 1-1 at 6).

[3] Claim 11. A method for producing a decorative appearance on a surface, comprising the steps of: providing a painted surface having a pattern; applying a coating of patterning composition onto the painted surface; applying a coating of paint to the painted surface and over the coating of patterning composition; and removing the coating of patterning composition and the coating of paint applied thereover to reveal a crystalline pattern in the paint remaining on the surface to which the coating of patterning composition was applied. (Docket Entry No. 1-1 at 7).

### c. Claim 17

Claim 17 sets forth a method for producing a patterned surface using methods slightly different from claims 1 and 11 in which the layers of the paint are applied, washed off, and sealed with a protectant.[4] Once again, since the requests for admissions submitted to Alsa were deemed admitted, Alsa concedes that it performed all of the steps of the patented claim. (Docket Entry No. 37-1 at 5-6, Request Nos. 43-51). Since Alsa admits to performing all of the steps of the claimed method, the undersigned concludes it should be held liable for direct infringement of the '168 patent claim 17.

### d. Claims 2-10, 12-16, and 18-22

Claims 2-10, 12-16, and 18-22 depend on and add qualifications to claims 1, 11, and 17. As with the independent claims, the requests for admissions submitted to Alsa regarding the dependent claims also were deemed admitted, and thus Alsa concedes that it performed all of the steps of the patented claims. (Docket Entry No. 37-1 at 2-11, Request Nos. 9-26; 33-42; 52-61). Since Alsa admits to performing all of the steps of the claimed method, the undersigned concludes it should be held liable for direct infringement of the '168 patent claims 2-10, 12-16, and 18-22.

### 3. Induced Infringement of the '168 Patent

A person may be liable as a patent infringer if he actively induces another person to infringe a patent. 35 U.S.C. § 271(b) (2006). To induce infringement, a person must "actively and knowingly aid and abet[] another's direct infringement." Water Technologies Corp. v.

---

[4] Claim 17. A method for producing a patterned surface, comprising the steps of: providing a painted surface; applying a coating of patterning composition onto the painted surface; drying the coating of patterning composition; applying a coating of contrasting paint to the painted surface and over the coating of patterning composition, after the coating of patterning composition has dried; drying the coating of contrasting paint; washing off the coating of patterning composition and the coating of contrasting paint to reveal a crystalline design in the paint remaining on the painted surface; and applying a protectant thereover. (Docket Entry No. 1-1 at 8).

Calco, Ltd., 850 F.2d 660, 668 (Fed. Cir. 1988). As the requests for admissions provide, Alsa concedes that it knowingly induced patent infringement by encouraging or instructing others on how to perform the manufacture of Crystal FX in a manner infringing the '168 patent (Docket Entry No. 37-1 at 7, Request Nos. 62-64). Considering that Alsa has admitted to inducing infringement, the undersigned concludes that Alsa should be liable for patent infringement for inducing another to infringe.

In sum, the undersigned concludes that plaintiffs' motion for summary judgment for claims of false marking, direct infringement, and induced infringement should be granted.

### C. Plaintiff's Remedies

Plaintiffs also seek an extensive monetary award for false marking and infringement of the '168 Patent. The false marking statute provides for a fine, and the Patent Act provides for damages for infringement.

#### 1. Fine for False Marking

Any person found to violate 35 U.S.C. § 292 shall pay a maximum fine of $500 for each false marking offense, half of which goes to the plaintiff and half to the United States. 35 U.S.C. § 292 (2006). The Federal Circuit has indicated that fines for false marking should be issued on a "per article" basis and that the district court retains the discretion to determine the amount of the fine. Forest Group, 590 F.3d 1295, 1302-03 (Fed. Cir. 2009).

Plaintiffs claim that, based on Alsa's sales records provided in a declaration by plaintiffs' attorney James Michels, Alsa sold 1,132 Crystal FX paint products on 748 separate occasions over the course of two years. (Docket Entry No. 50 at 1.) However, in the spreadsheet provided, this court counted 1,127 items sold on 584 occasions, not including instances with quantity or

7

price marked as "0" or instances where a sale seemingly was negated.[5]

Plaintiffs suggest that Alsa's violations, being intentional and extensive, are so serious that they merit the full $500 fine for each violation. However, as Docket Entry 52-1 indicates, Alsa earned $71,379.99 in revenue on sales of falsely marked Crystal FX. Ordering a defendant to pay in excess of $560,000 in penalties for $71,379.99 of revenue seems excessive. Therefore, the undersigned recommends that Alsa pay a fine of $6.33 for each instance of false marking. Accordingly, Alsa should be held liable for a fine of $7,138, representing ten percent of total revenue earned on sales of Crystal FX. The fine will be split equally between plaintiffs and the United States.

## 2. Reasonable Royalty and Treble Damages

Under the statute, damages for infringement must compensate for the injury caused by the infringement, and at a minimum must represent a reasonable royalty for the use of the infringed patent. 35 U.S.C. § 284 (2006).

By its admissions, Alsa acknowledges that a "rule of thumb" of between 15 and 40 percent of the expected profits of the patent is often used to determine a reasonable royalty. (Docket Entry No. 50 at 9, Request Nos. 91-92.) Further, Alsa admits that the parties would have agreed to a royalty of 33 percent of Alsa's profits from selling paint products made by the patented method. (Docket Entry No. 50 at 9, Request No. 93.) Based on the sales records submitted by plaintiffs, Alsa made $71,379.99 from the sale of products derived from plaintiffs'

---

[5] 584 = separate sales counted
145 = 0s
19 = instances of sales negated
748 = lines on sales report [separate sales counted + 0s + instances of negs]
710 = total sales registered [sales + 0s – instances of negs]
1,168 = qty of items sold
41 = total number of items negated
1127 = total qty [qty – total number of items negated]  (Docket Entry No. 52-1 at 1-17.)

8

patent. Thirty-three percent of the total revenue from the infringing products equals $23,555.40.

The court retains the discretion to increase damages three-fold. 35 U.S.C. § 284 (2006). Damages for patent infringement may be enhanced three-fold if the infringer acted willfully or "in wanton disregard of the patentee's patent rights." Read Corp. v. Portec, Inc., 970 F.2d 816, 826 (Fed. Cir. 1992). In the next sentence, the court notes that "a finding of willful infringement *does not mandate* that damages be enhanced, *much less mandate treble damages*." Read Corp., 970 F.2d at 826 (emphases added). The court goes on to say that the level of "egregiousness" in the defendant's conduct should determine whether to enhance damages, but that the court should also consider mitigating factors. Read Corp., 970 F.2d at 826.

Plaintiffs, in their "Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment," list a litany of reasons and instances in which Alsa acted willfully, egregiously, and in ways deserving of the full weight of damages authorized by law. (Docket Entry No. 50 at 16-17.) But considering that Alsa initially filed a counterclaim questioning the legitimacy of the patent, Request for Admission No. 1 notwithstanding,[6] and considering that Alsa generally expressed the intent to combat the claims brought against it, the undersigned concludes that the better exercise of discretion at this time would be to not enhance the royalty beyond $23,555.40 because of the high standard that "egregiousness" invokes.

### 3. Permanent Injunction

A court may issue a permanent injunction to prohibit and estop a defendant from infringing a plaintiff's patent. 35 U.S.C. § 283 (2006). In patent cases, a plaintiff must show the

---

[6] *Compare* Docket Entry No. 9 at 7 (Alsa's initial answer requesting the court to declare the '168 patent invalid or unenforceable or alternatively requesting the court to find that Alsa did not infringe the '168 patent) to Docket Entry No. 37-1 at 2, Request No. 1 (an admission deemed admitted in which Alsa concedes that the '168 patent is valid and enforceable).

9

following four elements before a court may issue an injunction: "1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006). Notably, in concurring opinions in the eBay case, seven justices concluded that where patent infringement was found, the "vast majority" of cases resulted in injunctive relief. eBay Inc., 547 U.S. at 394-97.

First, the plaintiff must show that it has suffered an irreparable injury. An injury may be "irreparable" if plaintiff cannot get an alternative remedy. Smith & Nephew, Inc. v. Synthes, (U.S.A.), 466 F. Supp. 2d 978, 982-83 (W.D. Tenn. 2006). Plaintiffs claim that the injury they have suffered is irreparable. (Docket Entry No. 1 at 5-6, ¶¶ 32, 38). Plaintiffs point to the fact that Alsa has not shown that it would be able to satisfy a monetary judgment, and that its assets are unknown. (Docket Entry No. 50 at 18-19.) Plaintiffs thus conclude that the order of monetary damages may not provide relief to plaintiffs. (Docket Entry No. 50 at 19.) This conclusion is supported by Alsa's inability to pay its former attorney and Alsa's letter to the court dated March 15, 2010, indicating that it could not respond to the summary judgment motion due to being unable to afford to hire a new attorney. (Docket Entry No. 28 at 1-2; Docket Entry No. 54 at 1). Thus, for purposes of the first element of the injunction analysis, plaintiffs in this case have suffered an irreparable injury.

Second, the plaintiff must show that remedies available at law, such as monetary damages, are inadequate to compensate for that injury. In this case, in addition to the concerns mentioned above regarding Alsa's ability to pay any judgment rendered against it, plaintiffs also

10

invoke their right to exclude others from using the '168 patent in order to derive the economic benefits contemplated by the patent in the first place. (Docket Entry No. 50 at 19.) Therefore, the second element of the eBay test is met because plaintiffs cannot otherwise be assured that their patent will be protected.

Third, the plaintiff must show that a remedy in equity is warranted considering the balance of hardships between the parties. Plaintiffs suggest that Alsa would suffer no hardship other than the loss of a stream of revenue which was provided in the first place by illegal conduct. (Docket Entry No. 50 at 19.) Such a hardship is not sufficient to defeat the order of an injunction against a defendant. Smith & Nephew, 466 F. Supp. 2d at 984. Therefore, plaintiffs have sufficiently alleged the third element necessary for an injunction.

Fourth, the plaintiff must show that the public interest would not be disserved by a permanent injunction. A number of cases indicate that the denial of an injunction for reasons of public interest is limited to cases where public health or safety are threatened, but that in general, the benefits derived from protecting a person's patent sufficiently serve the public interest. *See* MPT, Inc. v. Marathon Labels, Inc., 505 F. Supp. 2d 401, 420 (N.D. Ohio 2007) (citing TiVo Inc. v. EchoStar Communs. Corp., 446 F. Supp. 2d 664, 670 (E.D. Tex. 2006)); *see also* Smith & Nephew, 466 F. Supp. 2d at 985. Enjoining Alsa from using plaintiffs' patent does not threaten public health or safety. Also, an injunction preventing such use falls within the guideline that the public interest is generally advanced by protecting the integrity and exclusivity of the patent. Therefore, the fourth element is satisfied.

In conclusion, for the reasons previously stated, the undersigned recommends that a permanent injunction be issued against Alsa to prohibit further infringement on the '168 patent, further inducement of others to infringe, and further false marking.

#### 4. Attorney Fees

Plaintiff also moves for attorney fees, which the court may award in cases of "exceptional" patent infringement. 35 U.S.C. § 285 (2006). Willful infringement is one of many grounds for finding a case to be "exceptional." <u>Imonex Servs. v. W.H. Munzprufer Dietmar Trenner GmbH</u>, 408 F.3d 1374, 1378 (Fed. Cir. 2005)." Other courts have pointed to limitations on the assignment of attorney fees in patent cases, indicating that a court's discretion in awarding such fees should be limited to a "finding of unfairness or bad faith in the conduct of the losing party, or some other equitable consideration of similar force, which makes it grossly unjust that the winner of the particular law suit be left to bear the burden of his own counsel fees which prevailing litigants normally bear." <u>Park-In-Theatres, Inc. v. Perkins</u>, 190 F.2d 137, 142 (9th Cir. 1951).

Alsa has admitted that it willfully infringed the '168 patent, which may support a finding of "exceptional" patent infringement. (Docket Entry 37-1 at 7, Request No. 67). However, under the circumstances of this case, the undersigned would reserve judgment on whether Alsa acted unfairly or with bad faith at the present time, pending plaintiffs' separate application for such fees, interest, and costs.

#### 5. Interest and Costs

Additionally, the Supreme Court has interpreted the relevant statute to allow the recovery of interest and costs as compensation for the profit a plaintiff otherwise would have earned from lawful use of the patent. 35 U.S.C. § 284 (2006); <u>General Motors Corp. v. Devex Corp.</u>, 461 U.S. 648, 655-56 (1983). In <u>General Motors</u>, the court held that prejudgment interest should normally be awarded unless there is some justification for its withholding. 461 U.S. at 657. Plaintiffs have indicated that they will wait for the ruling on this summary judgment motion

12

before calculating interest and costs.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that the plaintiffs' motion for summary judgment for claims of false marking, direct infringement, and inducing infringement be GRANTED. The Magistrate Judge also recommends that defendant Alsa be required to pay a fine of $7,138 for false marking, half to plaintiffs Janbakhsh and Custom Designs of Nashville, Inc. and half to the United States. The Magistrate Judge also recommends that plaintiffs be awarded damages in the amount of $23,555.40 to be paid by defendant, and that defendant Alsa be permanently enjoined from further infringing on the '168 patent.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. FED. R. CIV. P. 72(b)(2). Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004) (en banc).

**ENTERED** this 21st day of June, 2010.

                                                               s/ John S. Bryant
                                                               JOHN S. BRYANT
                                                               UNITED STATES MAGISTRATE JUDGE